## BILLY RICH KIMBROUGH *v.* GIANT FOOD, INC. ET AL.

[No. 570, September Term, 1974.]

*Decided June 5, 1975.*

The cause was argued before ORTH, C. J., and DAVIDSON and MELVIN, JJ.

*George Molnar* for appellant.

*James P. Salmon,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court.

At about 7:25 a.m. on 13 February 1972 two store detectives employed by Giant Food, Inc., arrested the appellant, Billy Rich Kimbrough (Kimbrough), a security guard then employed as a night watchman, at a Giant store located on Annapolis Road in Prince George's County, Maryland. The arrest took place after Kimbrough, having completed his shift as a night watchman, had left the Giant store and while he was walking toward his car carrying two bags full of grocery store items. On 12 May 1972 the District Court acquitted Kimbrough of the charge of shoplifting.

On 14 September 1973 Kimbrough filed suit in the Circuit Court for Prince George's County against the appellees, Giant Food, Inc., and one of the store detectives (Giant), seeking, insofar as here relevant, damages for false arrest and malicious prosecution. After the presentation of all the evidence at a jury trial held on 9-10 May 1974, Judge Samuel W. H. Meloy found, as a matter of law, that Giant had probable cause to detain and arrest Kimbrough for shoplifting and, consequently, that no civil liability could attach. Accordingly, he granted a directed verdict in favor of Giant. On 13 May 1974 Kimbrough filed a motion for a new trial which Judge Meloy denied, after a hearing, on 4 June 1974. On that day final judgment was entered in favor of Giant. This appeal is from that final judgment.

Maryland Code (1957, 1971 Repl. Vol.), Art. 27, § 551A, provides, in pertinent part:

"Section 551A. Shoplifting.

(a) What constitutes. — In any mercantile establishment, it is unlawful for any person

1) to remove any goods, wares or merchandise from the immediate place of display or from any other place within the establishment with the intent to appropriate the same to the use of the person so taking, or to deprive the owner of the use, or value, or any part thereof;

. . .

(c) Civil liability for detention or arrest. — A merchant or an agent or employee of the merchant who detains or causes the arrest of any person shall not be held civilly liable for detention, slander, malicious prosecution, false imprisonment, or false arrest of the person detained or arrested, whether the detention or arrest takes place by the merchant or by his agent or employee, if in detaining or in causing the arrest of the person, the merchant or the agent or employee of the merchant had at the time of the detention or arrest probable cause to believe that the person committed the crime of shoplifting as defined in this section."

Under the common law want of probable cause has always been an essential element of an action for malicious prosecution.[1] Thus, the existence of "probable cause" to believe that a crime had been committed by the plaintiff, on the part of the person initiating the criminal action, barred the recovery of damages against him. The same was not true with respect to the tort of false arrest or imprisonment. Under the common law, in a false arrest or imprisonment case, an arrest or detention without legal authority, with or without probable cause, rendered the arresting person liable for compensatory damages, and, if the act was inflicted maliciously or wantonly, for punitive damages. The existence of "probable cause" on the part of the person

---

1. Brewer v. Mele, 267 Md. 437, 440, 298 A. 2d 156, 159 (1972); Gladding Chevrolet v. Fowler, 264 Md. 499, 505, 287 A. 2d 280, 284 (1972); Banks v. Montgomery Ward & Co., 212 Md. 31, 38, 128 A. 2d 600, 604 (1957); Kennedy v. Crouch, 191 Md. 580, 586, 62 A. 2d 582, 585-86 (1948); Shipp v. Autoville Ltd., 23 Md. App. 555, 570-71, 328 A. 2d 349, 358 (1974).

making an arrest could be considered for the purpose of mitigation of punitive damages but not for the purpose of defense.[2] Article 27, § 551A (c), by its express terms, changed the common law so that the existence of "probable cause" for an arrest or detention with respect to the crime of shoplifting relieved a merchant from civil liability when false arrest or false imprisonment was claimed.[3] As a result it is now the law that want of probable cause is an element not only of an action for malicious prosecution but also for an action for false arrest or imprisonment. In the case of false arrest and imprisonment, however, a merchant is relieved from civil liability only if the crime causing the arrest or detention is shoplifting as that crime is defined in the Act.

The question here is whether as a matter of law Giant, at the time of Kimbrough's arrest, had probable cause to believe that he had committed the crime of shoplifting as defined by Section 551A (a) of the Act.

Kimbrough contends that in order to establish the crime of shoplifting as defined by the Act, it is necessary to show, among other things, that (1) a seller-customer relationship exists between the merchant and the person taking the goods; (2) that the merchandise is taken during business hours; (3) that the merchandise was taken from the display shelves of the merchant's store; and (4) that the merchant was the owner of the goods taken. He further asserts that in order for the merchant to establish probable cause he must produce evidence to establish each of these elements.

We do not agree that all of the factors set forth by Kimbrough are requisite elements of the crime of

---

2. Great Atlantic & Pacific Tea Co. v. Paul, 256 Md. 643, 654, 261 A. 2d 731, 738 (1970); Clark's Brooklyn Park, Inc. v. Hranicka, 246 Md. 178, 186, 227 A. 2d 726, 730 (1967); Safeway Stores, Inc. v. Barrack, 210 Md. 168, 173-74, 122 A. 2d 457, 460 (1956); Mahan v. Adam, 144 Md. 355, 365, 124 A. 901, 905 (1924); Fleisher v. Ersminger, 140 Md. 604, 620, 118 A. 153, 159 (1922); Lewin v. Uzuber, 65 Md. 341, 348, 349, 4 A. 285, 289 (1886); Shipp, supra, at 23 Md. App. 568-70, 328 A. 2d 357-58; see Roberts v. Hecht Co., 280 F. Supp. 639, 640 (D. Md. 1968).

3. Montgomery Ward & Co. v. Cliser, 267 Md. 406, 411-12, 415-16, 421, 298 A. 2d 16, 20, 22, 25 (1972); see Great Atlantic & Pacific Tea Co., supra, at 256 Md. 656-57, 261 A. 2d 739.

shoplifting. Nor do we agree that a merchant must produce evidence to show each of the requisite elements of the crime of shoplifting in order to establish probable cause to believe that that crime was being committed.

The words of Art. 27, § 551A (a) are, for the most part, clear and unambiguous, thus requiring no interpretation or construction. The plain meaning of the words used is the best indicator of legislative intent.[4] The statute says that when any person in a mercantile establishment removes any goods, wares or merchandise from a place within the establishment with the intent to appropriate the same to his own use, or to deprive the owner of the use thereof, the crime of shoplifting has been committed.[5] There is no requirement that the person taking the goods be a "customer" of the establishment or that a "seller-customer" relationship exist; that the goods be taken during business hours; or that the merchandise be taken from the display shelves.

The words of the statute are not clear and unambiguous with respect to the question of whether "ownership" or "lawful possession" of the goods by the merchant is an essential element of the crime of shoplifting. Where the language of a statute is of doubtful meaning the courts will adopt a meaning which will best harmonize with the objectives and purposes of the enactment.[6]

---

4. Chillum-Adelphi v. Prince George's County, 269 Md. 486, 491, 307 A. 2d 481, 484 (1973); Scoville Service, Inc. v. Comptroller, 269 Md. 390, 393-95, 306 A. 2d 534, 537 (1973); Maryland National Bank v. Comptroller, 264 Md. 536, 541, 287 A. 2d 291, 294 (1972); Town of Somerset v. Montgomery County Board of Appeals, 245 Md. 52, 71, 225 A. 2d 294, 306 (1966); Secretary of State v. Bryson, 244 Md. 418, 425, 224 A. 2d 277, 281 (1966); Falcone v. Palmer, 242 Md. 487, 493-94, 219 A. 2d 808, 810-11 (1966); Pressman v. Barnes, 209 Md. 544, 558-59, 121 A. 2d 816, 823 (1956); League v. State, 1 Md. App. 681, 687, 232 A. 2d 828. 832 (1967).

5. In Maryland the word "mercantile" is defined as the "buying and selling of goods or merchandise, or dealing in the purchase or sale of commodities . . . habitually as a business." American National Fire Insurance Co. v. Lapidus, 210 Md. 389, 395, 123 A. 2d 597, 601 (1956); see 27 Words & Phrases. "Mercantile," at 95 (Perm. ed. 1961).

6. Fairchild Industries v. Maritime Air Service, Ltd., 274 Md. 181, 185-86, 333 A. 2d 313, 316 (1975); Sanza v. Maryland Board of Censors, 245 Md. 319, 340, 226 A. 2d 317, 328 (1967); Walker v. Montgomery County, 244 Md. 98, 102, 223 A. 2d 181, 183 (1966); Truitt v. Board of Public Works, 243 Md. 375, 394, 221 A. 2d 370, 382 (1966); Whitt v. Dynan, 20 Md. App. 148, 160-61 n. 13,

Giant contends that the use of the disjunctive word "or," preceding the statute's requirement of an intent to deprive the owner of the use or value of the goods, eliminates ownership or lawful possession as an essential element of the crime of shoplifting. We do not agree that by the use of that disjunctive connective the legislature intended so material and radical a departure from the traditional larceny concept that ownership or lawful possession in a person other than the taker is an essential element of the crime.[7] The purpose of the Act was to help protect merchants from the theft of their goods.[7a] Under the construction urged by Giant, a theft of goods from a customer within a mercantile establishment would constitute the crime of shoplifting. We do not believe that this was intended by the legislature. Our view is supported by the fact that the items taken must be "goods, wares or merchandise" removed from a mercantile establishment, which indicates that the goods taken must be ones owned by or lawfully possessed by the merchant. Moreover, such an interpretation precludes the existence of a possible inconsistency with or repugnancy between the shoplifting statute and those larceny laws applicable to theft from a mercantile establishment.[8] We therefore conclude that under Section 551A (a) ownership or lawful possession of goods by the merchant is an element of the crime of shoplifting.

---

315 A. 2d 122, 130 n. 13 (1974); Chambers v. State, 6 Md. App. 339, 343, 251 A. 2d 30, 32, *cert. denied,* 255 Md. 740 (1969)

7. Sippio v. State, 227 Md. 449, 451, 177 A. 2d 261, 262 (1962); Richardson v. State, 221 Md. 85, 88, 156 A. 2d 436, 437-38 (1959); Peaper and Lowe v. State, 14 Md. App. 201, 211, 286 A. 2d 176, 181, *cert. denied,* 409 U. S. 987, 93 S. Ct. 342 (1972); Prior v. State, 10 Md. App. 161, 167, 268 A. 2d 563, 567 (1970); Melia v. State, 5 Md. App. 354, 360-61, 247 A. 2d 554, 558 (1968); Anderson v. State, 3 Md. App. 85, 89, 237 A. 2d 813, 816 (1968), *cert. denied,* 393 U. S. 1106, 89 S. Ct. 912 (1969).

7a. *See* Comment, *Survey and Analysis of Criminal and Tort Aspects of Shoplifting Statutes,* 58 *Mich.L.Rev.* 429, 433 (1960); Kerr, *Shoplifting and the Law of Arrest: A Problem in Effective Social Legislation,* 19 *Md.L.Rev.* 28, 37-38 (1959); Annotation: *Validity, construction and effect of statutes establishing shoplifting as specific criminal offense,* 90 A.L.R.2d 811, 811-12 (1963).

8. *See* Saunders v. State, 8 Md. App. 143, 148, 258 A. 2d 776, 779 (1969).

Whereas ownership or lawful possession by the merchant is an element of the crime of shoplifting which must be proved in a criminal proceeding, it is not necessary for a merchant to prove either ownership or lawful possession in order to establish probable cause to believe that that crime had been committed. The rule of probable cause is a nontechnical conception, requiring less evidence for such belief than would justify conviction, but more evidence than that which would arouse a mere suspicion.[9] Probable cause has been defined as:

> ". . . a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty . . . mere belief, however sincere, is not sufficient. There must be such grounds of belief founded upon actual knowledge of facts as would influence the mind of a reasonable person." [10]

Thus, in order for probable cause to exist, there must be facts known to the person making the arrest such as would influence the mind of a reasonable man to believe that the goods taken are owned or lawfully possessed by the merchant. At the time of the arrest the person making it is not required to know that the goods are owned or lawfully possessed by the merchant but only to have reason to believe that they are.[11]

Kimbrough next contends that the trial court erred in granting a directed verdict for Giant. He maintains that the facts concerning the existence of probable cause, and in particular the question of the ownership of the goods, were

---

9. Nilson v. State, 272 Md. 179, 184, 321 A. 2d 301, 304 (1974); Mobley and King v. State, 270 Md. 76, 81, 310 A. 2d 803, 806-07 (1973), cert. denied, 416 U. S. 975 (1974); Williams v. State, 14 Md. App. 619, 626, 287 A. 2d 803, 807 (1972); Terrell v. State, 3 Md. App. 340, 359, 239 A. 2d 128, 138 (1968).

10. Gladding Chevrolet, supra, at 264 Md. 505-06, 287 A. 2d 284; Banks, supra, at 212 Md. 39, 128 A. 2d 604; Shipp, supra, at 23 Md. App. 573, 328 A. 2d 359-60.

11. Comi v. State, 26 Md. App. 511, 519, 338 A. 2d 918, 924; Anglin v. State, 1 Md. App. 85, 90-91, 227 A. 2d 364, 366-67, cert. denied, 246 Md. 755 (1967).

disputed and that the question of probable cause should have been submitted to the jury.

Before the enactment of Section 551A (c), the burden of proof in malicious prosecution cases was, as we have said, on the plaintiff to show that the defendant instituted criminal proceedings against him without probable cause. Now, in addition, under Section 551A (c), the plaintiff must establish want of probable cause to believe that the crime of shoplifting had been committed in order to recover in an action for false arrest or imprisonment.

The existence of probable cause is a question to be determined as a matter of law by the court upon a given set of facts from which only one inference can be drawn. When the facts are disputed or more than one inference can be drawn from a given set of facts, the question must be submitted to the jury under adequate instructions.[12] As accurately stated in *Kennedy, supra*,[13] the rule is:

> "If the facts relied on to constitute probable cause, or the inferences to be drawn therefrom are clear and undisputed, the question is one of law for the court; but if the evidence or inferences to be drawn therefrom are disputed, it becomes a mixed question of law and fact." [14]

Additionally, when a trial court directs a verdict in favor of one of the parties, this Court must assume the truth of all credible evidence in the case tending to sustain the contentions of the party against whom the verdict is directed as well as all inferences of fact reasonably and fairly deducible therefrom. Thus, in determining whether a plaintiff has produced sufficient evidence to go to the jury, the evidence produced as well as all legal and permissible inferences drawable therefrom, must be considered in the

---

12. Cliser, *supra*, at 267 Md. 416, 298 A. 2d 22; Shipp, *supra*, at 23 Md. App. 573-74, 328 A. 2d 359-60.

13. 191 Md. 590-91, 62 A. 2d 587.

14. *See also* W. T. Grant Co. v. Guercio, 249 Md. 181, 187, 238 A. 2d 855, 858-59 (1968).

light most favorable to the plaintiff.[15] If such evidence and the inferences deducible therefrom lead to conclusions from which reasonable minds could not differ, then the issue is one of law for the court and not one of fact for the jury.[16]

Viewing the evidence in this light, we narrate the facts as follows. On Saturday night, 12 February 1972, a store detective employed by Giant Food stationed himself at the employees' entrance to the supermarket. At about 11:25 p.m. the detective observed Kimbrough enter the store and watched him punch in. The detective noted that Kimbrough had no packages with him when he entered the store. Because Kimbrough had no duties to discharge until midnight he walked from the store to a nearby People's Drugstore to purchase some cigars. En route he noticed a Giant shopping cart which held two bags full of groceries that he assumed belonged to a customer who would shortly pick the items up. When Kimbrough returned from the drugstore he observed that the groceries were still in the cart. He wheeled the cart inside the Giant telling Mr. Young, a fellow security guard, what he had done. When no one claimed the groceries within the next five or ten minutes, he stamped the words "Giant Security" on each of the bags. He stapled cash register receipts which he found in the shopping cart, one in the amount of $.15 and the other in the amount of $.35, on top of each bag. He placed each of the bags under a desk at the front door, telling Mr. Young that, in case someone called for them, the packages could be found under the desk. Although the store detective was then in the store, he was making his rounds and was not standing at the front of the store.

At midnight all of the cash registers were closed. They

**15.** Wood v. Abell, 268 Md. 214, 231, 300 A. 2d 665, 673 (1973); Durante v. Braun, 263 Md. 685, 689, 284 A. 2d 241, 243 (1971); Rusnack v. Giant Food, Inc., 26 Md. App. 250, 252, 337 A. 2d 445, 447; Mike v. Service Review, Inc., 19 Md. App. 287, 298-99, 310 A. 2d 585, 592 (1973); Pratt v. Coleman, 14 Md. App. 76, 78, 286 A. 2d 209, 210-11 (1972).

**16.** Kaplan v. Baltimore & Ohio Railroad Co., 207 Md. 56, 62, 113 A. 2d 415, 418 (1955); Stitzel v. Kurz, 18 Md. App. 525, 531, 308 A. 2d 430, 434, *cert. denied*, 269 Md. 755, 761 (1973); Buchanan v. Galliher, 11 Md. App. 83, 87, 272 A. 2d 814, 817, *cert. denied*, 261 Md. 722 (1971).

remained closed throughout Kimbrough's shift at the store. Kimbrough made no purchases during the time that the cash registers were open. All of the employees and agents of Giant other than Kimbrough, including the store detective conducting the surveillance, left the store by 12:40 a.m. on Sunday morning. Kimbrough remained in the store alone. Throughout the night he performed his usual guard duties, remaining inside the store. At 6:00 a.m. the store detective, accompanied by an additional detective, returned to the store parking lot, parked about 75 feet from the store entrance, and watched the store entrance through binoculars. At 7:20 a.m. Kimbrough was relieved by another security guard. Notwithstanding company policies which required that goods mislaid or lost by customers and recovered by store employees or agents be inventoried in a log book and then returned to the shelves for sale, if perishable, or kept by security, if non-perishable, and which prohibited employees and agents from taking lost or misplaced goods out of the store, he picked up the bags previously marked "Giant Security" and walked out the front door of the store toward his car. He was then arrested for shoplifting by the store detectives. Kimbrough thereafter accompanied the two store detectives back inside the Giant where the detectives searched him, unpacked the bags and inventoried their contents. During the search they noted the $.15 and $.35 register receipts which had been stapled to the bags and looked for but did not find any other register receipts, either in the bags or upon Kimbrough's person. The only explanation offered by Kimbrough was that he was planning to take the goods to the house of his supervisor. The detectives called the county police who came and arrested Kimbrough.

Having resolved all the factual disputes in favor of Kimbrough, we now turn to the question of whether more than one inference can be drawn from that given set of facts or whether that given set of facts leads to conclusions from which reasonable minds could not differ. Kimbrough contends that this evidence, viewed in the light most favorable to him, was legally sufficient to submit to the jury

the question of a want of probable cause, on the part of the detectives making the arrest, to believe that the crime of shoplifting had been committed. He maintains that the evidence showed that the groceries taken did not belong to Giant but rather to a customer who had left them in a basket in front of the Giant store. He argues that the evidence establishes that the goods taken by him were abandoned; that he was the finder of those abandoned goods; and that he became first a bailee of those goods, and then their lawful owner. He concludes that under these circumstances Giant did not have probable cause to believe the crime of shoplifting had been committed.

The facts, however, do not support the conclusion that the goods taken by Kimbrough from the Giant were abandoned goods. The elements necessary to constitute an abandonment of goods by a purchaser were enumerated in *Merryman v. Bremmer*.[17] There the Court of Appeals, quoting from *Dorman v. Mayor and City Council of Baltimore* [18] said:

> "Abandonment depends upon concurrence of two factors, (a) an intention to abandon and (b) some overt act, or some failure to act, which carries the implication that the owner does not claim or retain any interest in the subject matter. Time is not an essential element, but may be considered in connection with acts manifesting such an intention."

Here the evidence shows that when Kimbrough discovered the two bags of groceries in the cart outside the Giant at about 11:25 p.m., he himself assumed that the customer intended to return to pick up the groceries. At about 11:35 p.m. when he placed the bags under a desk at the front door he still believed that the owner of the groceries intended to return for them. In the absence of any evidence to show when the goods were purchased, the failure of the owner to

---

17. 250 Md. 1, 11, 241 A. 2d 558, 565 (1968).
18. 187 Md. 678, 684, 51 A. 2d 658, 661 (1947).

return within the next 20 minutes, before the closing of the store at midnight, can hardly be regarded as an adequate passage of time to establish either an intent to abandon the goods or a failure to act with respect to the goods from which such an intention might have been inferred. The evidence was simply insufficient to support a conclusion that the goods were abandoned.

In contrast, the facts do support the inference that the goods taken by Kimbrough from the Giant were mislaid property. Mislaid property is property which an owner intentionally places where he can again resort to it, and then forgets.[19] Kimbrough's testimony that he himself assumed that the groceries he saw in the cart had been purchased by a customer who would return to reclaim them is indicative of the fact that the evidence was sufficient to establish that the goods were mislaid property.

Larceny is a crime against possession. 2 *Wharton's Criminal Law and Procedure*, § 497, at 169-70 (1957), states:

> "The ownership of property by the victim of larceny may be either an absolute or a special interest in the goods. It is sufficient that he has any legally recognized interest in the property which entitles him to possession as against the defendant, or that he is in possession which is lawful as to the defendant. It is sufficient if he has possession as bailee or pledgee under a contract of bailment or pledge. Moreover, it is not even necessary that the person from whom the property is taken should have the right of possession as against the true owner."

In Maryland it is recognized that the owner of premises where personal property is mislaid by an invitee has a right to possession against everyone except the true owner. When

---

**19.** Mickey v. Sears, Roebuck & Co., 196 Md. 326, 330, 76 A. 2d 350, 352 (1950); Rofrano v. Duffy, 291 F. 2d 848, 850 (2d Cir. 1961); Goss v. Bisset, 411 S.W.2d 50, 53 (Ky. 1967); Schley v. Couch, 284 S.W.2d 333, 335-36 (Tex. 1955); Dolitsky v. Dollar Savings Bank, 118 N.Y.S.2d 65, 68 (N.Y.Mun.Ct. 1952); Jackson v. Steinberg, 200 P. 2d 376, 377 (Ore. 1948).

he takes possession he becomes a gratuitous bailee by operation of law, with a duty to use ordinary care to return it to the owner.[20] Thus, when a third person steals goods from a bailee having a special right of property therein, it may be treated as larceny either from the general owner or from the bailee and the indictment may lay the ownership in either.[21]

Viewed in the light most favorable to Kimbrough, the facts establish that at the time of his arrest he left the grocery store having removed from it mislaid property, lawfully in the Giant's possession, for which he had not paid. Under these circumstances it is clear that the sole inference to be drawn from the facts is that Giant had probable cause to believe that at the time of his arrest Kimbrough had committed the crime of shoplifting and to institute criminal proceedings against him. The only explanation offered by Kimbrough was so incredible, under the circumstances here, as to make a further investigation unnecessary.[22] Kimbrough failed to produce evidence of want of probable cause sufficient to go to the jury. In sum, Section 551A (c) was applicable; Giant was thereby exempt from civil liability for false arrest and imprisonment as well as for malicious prosecution; and the trial court did not err in granting a directed verdict in favor of Giant.

Finally, Kimbrough contends that Article 27, Section 551A (c) is unconstitutional because it takes away "a property right guaranteed under the Federal and Maryland constitutions." He offers no argument on either the facts or the law to support his position. His only citation of authority is to a footnote in a law review article, *Kerr, supra,* at 19

---

**20.** Mickey, *supra,* at 196 Md. 330, 76 A. 2d 352; *see* Norris v. Camp, 144 F. 2d 1, 3 (10th Cir. 1944); Silcott v. Louisville Trust Co., 265 S. W. 612, 613-14 (Ky. 1924); 1 Am.Jur.2d, *Abandoned, Lost and Unclaimed Property,* §§ 23, 30 (1962).

**21.** Richardson, *supra,* at 221 Md. 88, 156 A. 2d 437-38; Loker v. State, 2 Md. App. 1, 24, 233 A. 2d 342, 357 (1967), *aff'd,* 250 Md. 677, 245 A. 2d 814 (1968), *cert. denied,* 393 U. S. 1082, 89 S. Ct. 862 (1969); 50 Am.Jur.2d, *Larceny,* § 132 (1970).

**22.** *See* Montgomery Ward & Co. v. Keulemans, 23 Md. App. 81, 94-99, 326 A. 2d 45, 54-56 (1974).

Md.L.Rev. 35 n. 53, in which the author merely noted that an American Civil Liberties Union official at one time had suggested that shoplifting statutes might be unconstitutional.

Maryland Rule 1031 c 4 provides that the brief of an appellant to this Court shall contain argument in support of his position. The Court of Appeals has held that issues, even of constitutional dimension, can be waived for failure to comply with the procedural requirements to preserve the right to appellate review.[23] Under the present circumstances the constitutional issue is not properly before this Court and will not be considered.[24]

> *Judgment affirmed.*
> *Costs to be paid by appellant.*

---

**23.** Hyde v. State, 228 Md. 209, 218, 179 A. 2d 421, 425 (1962), *cert. denied,* 372 U. S. 945, 83 S. Ct. 938 (1963); State Roads Commission v. Halle, 228 Md. 24, 31, 178 A. 2d 319, 323 (1962).

**24.** Maryland Rule 1031 c 4, f; *see* McMillan v. State, 3 Md. App. 699, 702, 240 A. 2d 765, 767, *cert. denied.* 251 Md. 750 (1968).